Good morning, your honors. My name is Tony Gallagher. I represent Rosemarie Wise, the appellant in this matter. Your honors, there is relevant here four factors in determining conditions of supervised release. And of course, Ms. Wise is attacking two of the supervised release conditions imposed by Judge Haddon. The four conditions or four factors that we have here are the history and characteristics of the defendant, affording adequate deterrence to criminal behavior, and protecting the public from further crimes of the defendant. Your honor, none of these factors, none of them, apply to either special condition number 8 or special condition number 9 in this particular case. Let me ask counsel about number 8. Yes, your honor. She had the probation and sentence report indicated that she had a history of sexually inappropriate behavior involving minor children, including her own. Now, wasn't the district court's imposition of condition 8 sufficiently related to the goal of protecting the public? Your honors, I mean, your honor, I don't believe so. And the reason I say that is because when you look at United States v. TM, and we talk about a gentleman who was convicted of kidnapping a child and was involved in criminal behavior, actually convicted of criminal behavior, it was not held to apply in that particular case. What we have to remember here is that the distinguishing factor is that Ms. Wise was not convicted of any inappropriate behavior. What does it matter? I thought we had law that said that the judge quite properly takes into account protection of the public and the material in the pre-sentence report, whether it is part of the offense of conviction or not. Gosh, you can even give a person prison time for things they haven't been convicted of, and you're required to if you're a judge under the relevant conduct guidelines. Well, that's absolutely true, but it doesn't apply here because obviously this wasn't relevant. No, it doesn't. That's true. But I can't find any restriction in the law to the offense of conviction in shaping the conditions. Oh, and that's true. There isn't. The factors that I mentioned at the outset of my argument certainly are all the things that the judge can consider, and certainly the law of this case is related to the supervised release conditions, but some of them must be. And in this particular case, to answer both Judge Nelson's question and Judge Kleinfeld's question, in this particular case what we have to remember is that any inappropriate behavior with children, as far as sex offenses is concerned, is at least 12 years beyond the offense of conviction in the time of the sentencing. Well, I don't know about that. It seems like it's just been a – it's not something that she did once 20 years ago or more, like in TM. It's a continuing course of conduct. My recollection is that the last instance was considerably more recent than that. I most respectfully disagree, Your Honor. With regard to sexual conduct, sexual misconduct or abuse, it's about 12 years ago. Now, there is an allegation of that. Let me be sure I understand what we're all referring to. The paragraph 57 of the PSR talks about on August 13, 1990, which would be your 12 years, I guess, if that's what you're relating to. This is the social worker investigating allegations wrote, my professional evaluation is that Rose Savage has a hidden agenda of sexual misuse of children and should not be allowed unsupervised visitation with any children. Is that what you're referring to? That's what I'm – that's one of the matters I'm referring to, yes. Well, is there anything beyond that? Well, there's one that's beyond that even in time, and that's June 8, 1988, when we're talking about the district judge in Missoula County. Well, that's going backwards. I'm talking about more recent. I know that. I'm looking for the latest. There's an entry, paragraph 59 of July 1996, psychological evaluation. But that doesn't seem to refer to – Is there anything more recent than 1990? Well, there is an allegation with regard to her histrionic or narcissistic traits, and there's also an allegation, unsubstantiated, I might add, that there has been some physical problems with her current son, Ricky. But that doesn't involve sexual offenses or sexual misconduct. So what we're talking about here is allegations of sexual misconduct, which, as Judge So we're much more like the TM situation, where these are ancient, remote. Wait a minute. What about the 1990, the greeting card with the photos of a minor female glued inside the card and bringing the minor female to visit the child molester? Twelve years ago, Judge, 1990. Let's see. She was sentencing in 2002. I'm looking at an offense date of 2000. Oh, I see. She was sentenced considerably later than that. Yes, Your Honor. She was sentenced in 2002. So those events are 12 years. The offense date is 2000. Yes, Your Honor. Ten years after that. That is true, Your Honor. But we're talking now about the sentencing and the considerations that the sentencing the amount that she'd done this, it seems to be an over and over kind of thing, rather than one odd moment in her youth. Why can't the judge figure that this is a pattern with this woman? Well, Your Honor, if it was a pattern, most respectfully, it would have shown up again since 1990. Now, it may have been a pattern in 1990, but it wasn't a pattern. If a woman or a man gets older, they have less access to small children than when they and all their friends are having them. Your Honor, in Ms. Wise's case, she was --- I don't see a lot of little kids when you're in your 50s the way you did in your 30s. Well, she has a 5-year-old right now. Yes, Your Honor. She has other children since this. She had a child with Mr. Coban in 1996, and she had another child with Mr. Wise sometime after that, 1998. So, I mean, she has access to small children, and there are no additional allegations of sexual abuse. As a matter of fact, in Savage's case, she was the one that reported that Savage was molesting her children, and Savage was subsequently convicted of sexual contact without consent. And she testified against him. She did. Could I ask you a question about number 9? Were you trial counsel? No, Your Honor, I was not. There was no objection to number 9, pornography 1. No, Your Honor, there isn't. And with respect to that, I have offered to the Court in my opening brief the plain error standard. But in reply to the government's brief, in my reply, I offered the Court an alternative, and that is because we were not given notice of this particular condition, that the Tenth Circuit suggests that perhaps the abuse of discretion standard should nevertheless apply. Didn't the judge recite it orally at the sentencing? He did. Isn't that the ordinary notice given? I thought that the no-notice cases were where it shows up in the judgment form, and nobody ever said anything about it at sentencing. That's true, Your Honor. But the notice that I'm talking about here is to give the defense an opportunity to respond in a sentencing memorandum to a proposed supervised release condition, much the same as the other. I'm not sure that the judge recited it. Trial counsel could have, yes. He did not. Let me get back to the abuse of children. On the thing with Savage, the way you put it in your colloquy with Judge Nelson, it sounded like she married Savage, he turned out to be a child molester, she turned him into the cop's end of Savage. But the way I read the pre-sentence report, it's not like that at all. Instead, she visits Savage and feeds his child-molesting pattern by presenting a girl to him. Your Honor, that's certainly true, but there's facts that we can't deny that are in the record. The fact is that she turned him in. The fact is she testified against him. Now, she goes back to Savage when he's in prison and does, in fact, do what the Court says he does, she does, and that is feed his desires. But the focus here, Judge, is the facts. It looks like basically it's her desires, too, except she had a spat. In 1990. In 1990, not in 2002. And that's why this case is so much like the other. What's the evidence that she changed? There's no evidence of further contact. There's no evidence of further sexual offenses. The judge has to – the district judge has to have some basis beyond these remote instances. It's hard for me to think of in common-sense terms. I'm thinking I would not hire an embezzler to manage my office money, even if his embezzlement conviction was 20 years ago. Your Honor, if there's just – if you – It's taking an unreasonable chance. That may be true, but the – as the Court, as you pointed out earlier in your question, if there is going to be additional sexual offender characteristics, they would certainly show up if he – she had contact with children. The Court assumes she had no contact with children, but the record is clear. She does have contact with children and with little children, her own. Maybe she just hasn't gotten caught yet. Well, Your Honor, DPHS has been monitoring this woman for years, as the Court can tell from the record, and there's been no allegation of sexual abuse. Your Honors, I see that my time is over. Thank you very much. Thank you, counsel. Counsel. May it please the Court. Counsel, my name is David Dennis. I'm an assistant U.S. attorney with the District of Montana, representing the United States in this matter. The question here, Your Honors, is whether or not, with respect to conditions number 9, the Court abused its discretion in imposing the conditions it did, in imposing the restrictions on the appellant's access to minor children, children under the age of 15. Which is which? Condition number 9, Your Honor, is the condition which restricts the appellant's access to minor children and also sets conditions for custody. Yeah. And... And restricts her right to her own child. It does, but not in a great sense, Your Honor. What it does is it directs that the department, Montana Department of Health and Human Services, approve any sort of custodial relationship that the appellant has with the child. So in a sense, it does restrict it, but it only restricts her access to her child by setting the condition that her custody be reviewed by the Department of Health and Human Services. Is there anything in the record counsel suggested that we could infer from the record that she was under constant monitoring already? Is that in the record? It's not. It's not, Your Honor. Not from... It just introduced a condition on her access to her child that was not then at all in place. Is that correct? That is correct, Your Honor. Although there is some indication in the record that she had... She was being investigated by the Department of Health and Human Services. Okay. Now, this was objected to, so it's an abuse of discretion, but it was objected to when this was presented for the first time at the sentencing hearing. The court didn't give any notice, I take it, either to you or to... You were the... Were you the prosecuting attorney? I was, Your Honor. Okay. The court didn't provide any notice. Now, our case law, as Judge Kleinfeld indicates, suggests that notice may be conveyed at the time of the hearing, but my reading of Lopez is that occurs when the special condition that's imposed is expressly contemplated by the guidelines, because that, in essence, gives constructive notice. What is it in the guidelines that would have given the defendant any advance notice? Or you, for that matter, that restriction on child access or restriction on sexual materials, pornographic materials, would be on the table at the sentencing hearing? Your Honor, I'm not aware of any provision in the guidelines which would have suggested that that would have been on the table. Under Federal Rule of Criminal Procedure 32.1, I think... Well, I know from reading the rule that what the appellant is entitled to, is entitled to comment on any special condition set by the judge. And here, that clearly was the case. Under Fearns, he's also entitled under that to have advance notice so that there can be adequate opportunity to prepare. Just to be able to comment isn't the same as having some opportunity to provide some information to the judge that would read on that. Here we are now left with a record in which we are trying to extrapolate from the PSR and some summary statements about protection of the public as to what was going on. And I'm asking you questions about the DPF, the Welfare and Social Services Agency. There's precious little in the record about that. Speaking for myself, I'm quite troubled that this was sprung on the parties. The judge may well have been within proper ambit if there had been a full discussion of it, but we're left, I feel we're left with a very spare record on which to uphold it. Yes, Your Honor. And certainly there wasn't a great deal of discussion by the district court judge as to the factors underlying the imposition of the conditions. But the judge did refer to the record and say clearly there is grounds in the record for the imposition of those conditions. And when you look at a record that's replete with the findings that we have throughout paragraphs 44 through 59 with regard to either her sexual abuse or sexual exploitation of children, her own children, other children, her feeding the actual sexual exploitation of another sex offenders. Twelve years prior. And here she has a five-year-old child. She's been with that child. She's had custody of that child the whole time. No charges have been filed against her during that time. And what troubles me about this case is depriving the mother of the right to the child when nothing has been filed against her during the whole five years she's had the child. It seems to me to raise really serious due process concerns. Well, again, Your Honor, going back to the condition that was imposed, the judge didn't specifically state that the appellant would be deprived of her right to the child. The condition that the judge imposed was that the Department of Health and Human Services would review any custody or custodial arrangements that the appellant would have. And the judge did so based upon the record that was before it, which did include referrals to the Department of Health and Human Services, alleging and I can see that they have not yet been substantiated, but alleging that this child was being abused. Was she permitted to take the child home after the hearing? I don't think I can answer that question. I think that question. There's nothing in the record to show, I should ask. No. There's nothing in the record to show that she would be entitled to take that child home after she's released from her prison. I replied to the record that she certainly would not. Okay. Your Honor, and I guess as I read the record, I see it as if the Department of Health and Human Services allows her to take the child home, then she will be able to. I don't see that condition as taking away her custodial rights. Well, she's had this child for five years, lived with her the whole time. Not, the child's never, there's never been anything charged with respect to her, that child. That five-year-old child leaves the courtroom in the custody of somebody other than the mother. There was no notice before that happened. Although there was no comment made at that time, such a basic right, it disturbs me without saying this is what I'm considering. I want to hear argument on this because they obviously were not prepared to say anything. I guess, yeah, I understand your concern, Your Honor, and I guess my only response to that would be that the Department of Health and Human Services hadn't removed the child from her custody prior. You're not helping me on something. You're talking on a track that's different from the one I'm on. Let me explain my problem. But I think he was talking about Judge Nelson's track. I'm on the same one. Okay. You say they didn't, the judge didn't take the child away. He just made the custody subject to Department of Social Services supervision. And then I look at Paragraph 9, and it says, The defendant shall not be allowed to reside in the company of any child under the age of 18 without prior approval of United States probation. Well, that means to me, first you get approval, then you can be with the kid. So custody is over now. You have to get approval of probation, and you also have to get approval of Department of Public Health and Human Services in the next sentence. So it looks to me as though Paragraph 9 does by itself take away custody, subject to it being restored by the approval of these two departments. I'm not clear on what notice Wise had beyond the judge reciting the condition at the time of sentencing. Could you tell us what justification there is in the record for ending the custody subject to it being restored with approval of these two departments? And could you tell us what there is in the record that shows prior notice of this condition? Your Honor, I can't point to prior notice of the condition. I don't believe there's anything in the PSR. So the notice is when the judge says it on the bench, and then it's the defense lawyer's opportunity to say, Your Honor, we have a problem with the conditions before sentence is pronounced. Could we submit a memo? Yes, Your Honor. And then with respect to, I think, your first question, I guess I read the condition differently. I read the condition as sort of a blanket condition on access or contact with minors under the age of 18. But then the court goes back and specifically addresses what's to be done with the appellant's son. It looks like a two-step process. Oh, I see. You think the first sentence is for other kids and only the second sentence is about her own son. That's how I read it, and that's my position, Your Honor. Okay. Assuming that that's true, could you tell us what justification there is in the record for the judge interfering with the custody of her son? I think that the justification comes from the record of her history and her characteristics of the prior exploitation of children. How do you deal with appellant's counsel's argument that it's ancient history? I don't believe it is ancient history. It took place back in 1988, 1989, and 1990. But what we see here is a history of a woman who is and who has been found to be severely disturbed in a psychological evaluation in 1988, I believe. The mental health examiner or psychiatrist found that she was not fit to have custody of any of her three children at that point. If we move ahead to 1996, there's another mental health evaluation. And in that mental health evaluation, she's found to have histrionic and narcissistic personality traits. And more importantly, I think, the conclusion is that she refuses to acknowledge that she has the psychological problem or that she contributes to that psychological problem. And that is not ancient history. That is a continuing pattern of this woman's, I guess, behavior or condition. But there's no history of her dealings with her five-year-old child. Well, Your Honor, she's had five children. She lost custody of the first three. She lost custody of the fourth child. And she is being investigated by the Department of Health and Human Services with regard to the child that's in question here. But that is an even stronger argument, it seems to me, that Ricky is not being removed from her, despite the fact that he was born five years ago. He is not, Your Honor. I believe I'm out of time. The clock shows two full minutes. If the judges have questions, you get to stay up there and answer them. Are there any further questions? You don't get to call time on the bench. Okay. Are there any? If there are no further questions, we'll. Thank you. Thank you, counsel. Thank you. Your Honor, I don't think I had any time left, but I mentioned to Mr. Dennis that there was a case that was decided January 26th, 02-3029, United States v. Williams. It discusses a supervised release condition and mentioned specifically that the district court in that case did not apply the no greater deprivation of liberty than reasonably necessary standard. Thank you, judges. Thank you, counsel. United States v. Wise is submitted. We'll take that 10-minute recess. Thank you.
judges: D.W. Nelson, Kleinfeld, Fisher